# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JORGE H. CORTES,
     *Plaintiff,*

vs.

Case No. 2:13-CV-2119-EFM

CAROLYN W. COLVIN,
Commissioner of Social Security
     *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Jorge H. Cortes ("Plaintiff") seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. In his pleadings, Plaintiff alleges multiple assignments of error concerning the assessment of his residual functional capacity, including a failure to properly consider third-party statements, weigh the opinions of treating sources and state examiners, and provide a satisfactory narrative, as well as assessment of credibility issues. Plaintiff also alleges error with regard to the Commissioner's decision that Plaintiff is able to return to his past relevant work. Upon review, the Court finds that the Commissioner's decision with regard to residual functional capacity was not supported by substantial evidence contained in the record. As such, the decision of the Commissioner is reversed and remanded for further consideration.

## I. Factual and Procedural Background

Plaintiff's relevant medical issues date back to January 14, 2005, when Plaintiff's chiropractor, Terry Shroyer, DC ("Shroyer") took x-rays of Plaintiff's spine that revealed a subluxation of the L5, C1, and C6 vertebrae, a ten-millimeter apparent deficiency of the left leg, and loss of cervical curve with advanced phase two degenerative changes. In May 2009, Plaintiff returned to Shroyer for additional x-rays. These scans showed a subluxation of the L4 and C5 vertebrae, a thirteen-millimeter apparent deficiency of the left leg with compensatory scoliosis, increased scoliosis, and arthritic spurring of the L2 and C5 vertebrae. Shroyer recommended Plaintiff undergo spinal adjustments when necessary.

Plaintiff's treatment with Shroyer was sporadic, with only fourteen documented visits between January 2005 and August 2012. In December 2010, an examination revealed that Plaintiff had an unstable knee, which Shroyer noted was correctable with orthotics. Plaintiff declined treatment, citing financial concerns. Shroyer indicated that Plaintiff had not undergone any additional x-rays or scans, again citing financial concerns. Plaintiff was also reported to be chronically obese, with no weight recording in the past thirteen months. On June 2, 2011, Shroyer issued a medical statement that described Plaintiff's impairment as a progressive spinal condition that was causing advancing degenerative changes of the lumbar spine. Shroyer indicated that the condition was permanent and non-reversible and prevented Plaintiff from working.

Meanwhile, in February 2010, Plaintiff began treatment with Dr. Richard E. Lochamy, MD ("Dr. Lochamy") for high blood pressure. Plaintiff saw Dr. Lochamy three times in 2010 for medication management. On March 8, 2011, Dr. Lochamy noted that Plaintiff had lost his job and could no longer afford his medications. Plaintiff was again diagnosed as obese. Shortly

thereafter, Plaintiff began seeing nurse practitioner Linda Bott, ARNP ("Bott"). In May 2011, Bott diagnosed Plaintiff with benign essential hypertension, diabetes mellitus, and hyperlipoproteinemia, type II-B.

During his visits with Bott, Plaintiff discussed his ongoing lower back and right shoulder pain. Plaintiff noted that he was seeing a chiropractor and usually got relief after his adjustments. Bott's notes indicated that Plaintiff consistently had a normal range of motion in his upper and lower extremities and no tenderness upon palpation of his spine. While Bott usually noted Plaintiff's unemployed status, her notes from a June 2011 appointment indicated that Plaintiff had "been working some," which resulted in back pain not relieved by Plaintiff's usual course of ibuprofen. In October 2011, Plaintiff told Bott that he was applying for disability benefits.

In January 2012, Plaintiff traveled to his native Colombia for three months. While there, Plaintiff had an MRI of his lumbar and cervical spine. These scans revealed that Plaintiff suffered from bulging discs at the C4-C5 and C6-C7 vertebrae, mild cervical spondylosis, and intermuscular lipoma on his left side. The scans also showed protrusion of the L1-L2 discs, as well as foraminal stenosis, predominantly on his left side. Plaintiff was diagnosed with degenerative discopathy, lumbar spondylus osteoarthritis, and a Schmorl node. In June 2012, Bott noted that Plaintiff was doing well with his high blood pressure and spine and joint issues.

Plaintiff filed for both DIB and SSI on November 5, 2010, alleging disability beginning October 15, 2010. His claims were denied initially on June 2, 2011, and upon reconsideration on October 7, 2011. Plaintiff timely filed a request for an administrative hearing, which took place on July 3, 2012, before Administrative Law Judge Timothy G. Stueve ("ALJ Stueve"). Plaintiff, represented by counsel, appeared and testified.

At the time of the hearing, Plaintiff was fifty-seven years old and had been living in a friend's basement for the past year. Plaintiff graduated from high school in Colombia and had at least some additional education in the fields of electromechanical engineering and business administration. Plaintiff immigrated to the United States in 1978. When asked if he was receiving any income, Plaintiff testified that he had been receiving unemployment benefits for the past fifteen months after having been laid off from work as a professional residential and commercial painter in October 2010 when his employer ran out of work.

Plaintiff gave testimony about several of his impairments, including his high blood pressure, diabetes, and back and shoulder pain. Plaintiff indicated that his high blood pressure and diabetes were effectively managed by medication. Plaintiff testified that he had never had surgery for his back or shoulder issues, but was on pain medication twice per day. He stated that his chiropractic adjustments helped and the benefits usually lasted two weeks. Plaintiff also noted that he used BioFreeze on his joints at night. He indicated that he could walk for thirty minutes at a time but could not stand for long and required frequent breaks to sit down.

With regard to activities of daily living, Plaintiff indicated that he read, watched television, and drove short distances. Plaintiff also testified that he could get dressed by himself and would regularly visit friends, attend church activities, go fishing, and housesit a friend's ranch. He noted that he had difficulty with stairs and sometimes required naps of up to two hours. Plaintiff stated that, on average, he would spend four days per month in bed due to his back pain. During cross-examination, Plaintiff indicated that he had recently been up on a ladder helping a friend paint windows, although he testified that he usually did not go up on ladders.

In addition to Plaintiff's testimony, ALJ Stueve also sought the testimony of Vocational Expert Doug Lindall ("VE Lindall") to determine how, if at all, Plaintiff's impairments and

limitations affected his ability to return to the workforce. VE Lindall described Plaintiff's past work as a painter and maintenance worker as medium in terms of exertion, although he noted that Plaintiff performed the job of painter at a heavy level of exertion. Based on this testimony, and upon his review of Plaintiff's entire record, ALJ Stueve asked the VE a series of hypothetical questions that included varying degrees of limitation on actions such as lifting, carrying, standing, walking, and communication. The ALJ also included limitations on the individual's need to miss work, lie down during the workday, and have a sit/stand option. On cross-examination, Plaintiff's counsel questioned the VE only as to whether Plaintiff's past relevant work could be performed at a light level of exertion, to which the VE responded in the negative.

On July 23, 2012, ALJ Stueve issued his decision, finding that Plaintiff suffered from a variety of severe impairments, including hypertension, diabetes mellitus, and degenerative disc disease. Despite these findings, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ALJ Stueve concluded that Plaintiff retained the residual functional capacity to perform medium work, as that term is defined under Social Security Regulations, with the following limitations and/or exceptions: (1) only occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds; (2) stand, walk, and sit for a total of six hours during an eight-hour workday; (3) receive job instruction only by demonstration; and (4) requires no need to verbally communicate in English. The ALJ therefore concluded that Plaintiff had not been under a disability since October 15, 2010, the alleged onset date, through the date of his decision.

Given this unfavorable result, Plaintiff sought reconsideration of ALJ Stueve's decision from the Appeals Council. The Council denied review on January 8, 2013. As such, the ALJ's July 2012 decision became the final decision of the Commissioner.

On March 8, 2013, Plaintiff filed a Complaint in the United States District Court, District of Kansas seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Given Plaintiff's exhaustion of all administrative remedies, his claim is now ripe for review before this Court.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[1]  The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[3]  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if he can "establish that [he] has a physical or mental impairment which prevents [him] from engaging in substantial gainful activity and is

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that [he] is unable to perform [his] past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering [his] age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [his] impairments."[10]

---

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[8] *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[12] The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[13]

### III.    Analysis

Plaintiff's assignments of error primarily stem from the ALJ's assessment of Plaintiff's residual functional capacity. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations."[14] A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."[15] The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record.[16] The ALJ must "explain how any material inconsistencies or

---

[11] *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id*.

[14] *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001).

[15] SSR 96-8p, 1996 SSR LEXIS 5, at *19 (July 2, 1996).

[16] *Id*.

ambiguities in the evidence in the case record were considered and resolved."[17] However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[18]

Here, Plaintiff alleges that the ALJ did not properly formulate Plaintiff's residual functional capacity due to the ALJ's failure to assess: (1) third-party opinion evidence, namely that of Plaintiff's former employer as well as a representative of the Social Security Administration; (2) the opinion and findings of Plaintiff's treating chiropractor, Shroyer; (3) the opinion and findings of state agency examiners Dr. Karen Sarpolis, MD ("Dr. Sarpolis) and Dr. C.A. Parsons ("Dr. Parsons"); and (4) Plaintiff's credibility. Plaintiff also alleges that the ALJ failed to provide a proper narrative with regard to his residual functional capacity assessment. Upon review of the evidence, this Court finds that Plaintiff's assignments of error with regard to residual functional capacity contain some merit.

Plaintiff first asserts that the ALJ erred by failing to consider the third-party information and observations offered by Plaintiff's former employer, All Cities Enterprises, Inc., ("All Cities") as well as by the Commissioner's own employee, J. Hopper ("Hopper"). On July 13, 2011, Laura Montes ("Montes"), Human Resources Manager for All Cities, completed a "check-the-box" Work Activities Questionnaire at the request of the Social Security Administration. In this questionnaire, Montes indicated that, during his time as a painter with All Cities, Plaintiff had great difficulty with completing his duties without physical limitation or becoming fatigued and without special accommodations or extra breaks. Montes did not provide any additional detail as to these limitations, but she did note that Plaintiff was laid off in October 2010 only

---

[17] *Id.*

[18] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

because of All Cities' lack of work. On November 9, 2010, Social Security Administration interviewer Hopper completed a Disability Report for Plaintiff via telephone and indicated that he had some difficulty understanding Plaintiff's responses to questions due to Plaintiff's limited English-speaking capabilities. Plaintiff alleges that ALJ Stueve was required to consider and discuss these opinions in his decision. Plaintiff is partially correct.

The law in the Tenth Circuit is clear with regard to "opinion testimony or statements from lay witnesses such as spouses, parents, friends, and neighbors. The decision *must* reflect that the ALJ included the opinion in his consideration of disability, but he need not specify the weight accorded to that opinion. Nonetheless, he *may* do so in explaining the rationale for his decision."[19]

Here, ALJ Stueve does not mention, even in passing, the opinions of either Montes or Hopper. The Commissioner argues that this omission is simply harmless error, given that neither of these opinions is uncontroverted or significantly probative. In her argument, the Commissioner relies on the general rule that, in an action for Social Security benefits, "an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[20] The Commissioner argues that the ALJ was not required to discuss the opinion of Montes, as Plaintiff's own testimony and statements directly contradicted Montes' opinion. Further, the ALJ included a limitation on Plaintiff's ability to communicate in English in his assessment of Plaintiff's residual functional

---

[19] *Jackson v. Colvin*, 2013 U.S. Dist. LEXIS 172576, at *17 (D. Kan. Dec. 9, 2013) (quoting *Croley v. Colvin*, 2013 U.S. Dist. LEXIS 22052, at *15-16 (D. Kan. Feb. 19, 2013) (emphasis added)).

[20] *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

capacity, an outcome that seems to take into consideration Hopper's experience with and assessment of Plaintiff.

Based on Tenth Circuit precedent, the Commissioner's argument is simply not enough to overcome the fact that the ALJ failed to mention, or even acknowledge the existence of, these third-party statements. What is of more interest to this Court is the fact that, while the Commissioner argues that Montes' opinion is directly contradicted by Plaintiff's own testimony and statements, the ALJ goes on, later in his decision, to completely discredit Plaintiff's testimony, a decision with which the Commissioner clearly agrees. The Commissioner cannot rely upon evidence to support her position on one issue while simultaneously dismissing that same evidence as non-credible.

Without the benefit of the ALJ's findings supported by the weighing of this potentially relevant evidence, this Court cannot determine whether the ALJ's conclusions as to Plaintiff's residual functional capacity are supported by substantial evidence. This Court is aware that Plaintiff alleges several assignments of error with regard to the assessment of his residual functional capacity. However, without proper analysis of these third-party statements, any determination as to the appropriateness of the ALJ's assessment is necessarily incomplete. The Commissioner's decision with regard to Plaintiff's residual functional capacity is therefore reversed and remanded to the Commissioner for further consideration in accordance with this order.

Because this Court reverses and remands for additional proceedings with regard to residual functional capacity, it is unnecessary to reach Plaintiff's assignment of error at step four, namely that VE Lindall's testimony was inconsistent with the Dictionary of Occupational Titles, which therefore allowed the ALJ to erroneously determine that Plaintiff was able to return to his

past relevant work. This is especially true given that a determination at step four is centrally focused on the ALJ's assessment of Plaintiff's residual functional capacity.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is REVERSED, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

Dated this 23rd day of April, 2014.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE